[Civ. No. 33693. First Dist., Div. Three. Sept. 4, 1974.]

JOSEPH F. ZIMMERMAN, JR., et al., Plaintiffs and Appellants, v. EARL W. BRIAN, as Director, etc., Defendant and Respondent.

■■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Calvin T. Goforth for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Charlton G. Holland, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**COUGHLIN, J.**\*—Appellant Zimmerman, a licensed pharmacist, and appellant Z. M. Pharmacy, Inc., a closed corporation doing business as Medical Service Pharmacy, appeal from a judgment in a mandamus proceeding which, in substance, affirms the decision of respondent, the Director of the Department of Health Care Services, suspending appellants' participation in the Medi-Cal program for three months.

Zimmerman, acting through Z. M. Pharmacy, Inc., owned and operated a prescription pharmacy; obtained an authorization as a provider of prescription drugs under the Medi-Cal program with a consequent entitlement of payment from Medi-Cal funds for drugs provided Medi-Cal beneficiaries (gen. see Cal. Admin. Code, tit. 22, §§ 51051, 51451, 51454); in 1969 provided Medi-Cal customers with drugs for which appellants charged and were paid $108,164.48; and in 1970 provided drugs for which they charged and were paid $118,911.72.

The decision of respondent suspending appellants' participation in the Medi-Cal program is premised on the claim they were subject to suspension under existing statutes and regulations because the price they charged Medi-Cal customers for prescription drugs during the 1969-1970 period was greater than the price charged other customers for the same drug. An audit of appellants' accounts disclosed the price appellants charged Medi-

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

■■■■■■■■■■

Cal customers for drugs dispensed during the month of July 1969 and the month of March 1970, which had been paid by Medi-Cal, exceeded the price charged other customers during the same months. Premised on this finding respondent, by computation, determined appellants had overcharged and had been overpaid $4,862.43 for the year 1969 and $5,940.47 for the year 1970. Appellants claimed the price charged Medi-Cal customers for a particular product, which did not exceed the average of all of the prices charged other customers for all drugs, was proper; the prices they charged were based on this formula; and on this basis there was no overcharge. Nevertheless, appellants paid the amount of the claimed overcharges disclosed by the audit.

Initially we consider the pertinent statutes and regulations in force during 1969 and 1970.[1] The provisions of Welfare and Institutions Code section 14105 in effect prior to and during the period in question authorized respondent "to limit the rates of payment" for services provided under the Medi-Cal program, which included dispensing prescription drugs, and to adopt such rules and regulations as are necessary for carrying out the provisions of the statutes affording such services. (See Stats. 1967, ch. 104, p. 1016; Stats. 1969, ch. 21, p. 97; Stats. 1969, ch. 1274, p. 2486.)

In 1968 the following regulation was adopted: "Payment for drugs dispensed by licensed pharmacists . . . shall consist of the cost of *the drug,* plus a fee for services. The price charged to the program shall not exceed that charged to the general public." (Italics ours.) (Cal. Admin. Code, tit. 22, § 51513—reg. 68, No. 33.) This regulation, adopted pursuant to the authority conferred by Welfare and Institutions Code section 14105, limited the price charged Medi-Cal customers for a prescription drug to the price charged the general public for that drug. The first sentence of the regulation refers to the cost of *"the drug"* as one of the factors to be considered in determining the price to be paid. The following sentence limits this price, i.e., the price for *"the drug,"* to the price charged the general public. There is no basis for appellants' claim the regulation provided the price charged Medi-Cal customers for *"the drug"* should not exceed the average of all of the prices charged the general public for all drugs.

In 1968 appellants received a Medi-Cal formulary (gen. see Cal. Admin. Code, tit. 22, § 59999) listing the drugs for which Medi-Cal would accept billing, with an attached instruction sheet which stated the charge to the program for the named drugs shall be the lower of the acquisition cost of

---

[1]Both sides consider statutes and regulations not material to the issues at hand. We confine our consideration to pertinent statutes and regulations only.

*"the drug"* dispensed, plus $2.30, or the price charged to the general public. Appellants allegedly believed, under this instruction, the allowable price charged Medi-Cal customers for a particular drug was the average of all prices charged the general public for all drugs, and billed Medi-Cal for drugs furnished to Medi-Cal customers in 1969 and 1970 accordingly. There was no basis for appellants' belief.

In 1969 the Legislature added subdivision (a) to section 14123 of Welfare and Institutions Code (Stats. 1969, ch. 994, p. 1967; eff. Nov. 10, 1969) which provided: "The director may suspend a provider of service from further participation under the medical assistance program for violation of . . . any rule or regulation promulgated by the director pursuant to this chapter . . . ." The statute further provided: "Subdivision (a) of Section 14123 as added . . . does not constitute a change in, but is declaratory of the preexisting law, and shall be construed merely as providing a specific statutory basis for suspension." The latter provision undoubtedly was prompted by the provisions of two regulations adopted in 1968 authorizing the director to suspend a provider for failure to comply with applicable regulations or procedures. (See Cal. Admin. Code, tit. 22, §§ 51453, 51455—reg. 68, No. 43.)

In 1970 a regulation was adopted providing, in substance, the violation of any rule or regulation by a provider of health care services "shall be deemed contrary to public health, safety, welfare, and morals, and to said program and grounds for suspension from participation in the program." (Cal. Admin. Code, tit. 22, § 51452; eff. Apr. 1, 1970.)

Respondent accused appellants of violating the price control regulations and sought their suspension. A hearing was held. The hearing officer recommended suspension. Respondent adopted the decision of the hearing officer and ordered suspension. Appellants instituted administrative mandamus proceedings to review the decision. The trial court independently reviewed the evidence (gen. see *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]); made findings; and concluded the decision should be affirmed.

■ Appellants seek reversal upon the ground allegedly pertinent regulations denied them due process of law; and the decision is an abuse of discretion.

The denial of due process contention is based on the fallacious premise "the only statute germane to this case is Welf. & Inst. C. Sec. 14103.2" which provides, when the director determines the practices of a provider cost the program in excess of reasonable value received, the provider shall

thereafter be disqualified from participation in the program; on the claim the regulations in California Administrative Code, title 22, sections 51513 and 51452, heretofore noted, and in section 51480[2] in effect create a conclusive presumption that charges to the program at prices greater than prices charged the general public "cost the program in excess of reasonable value received" (see Cal. Admin. Code, tit. 22, § 51480), are contrary to public health, safety, welfare and morals, and are ground for suspension (see Cal. Admin. Code, tit. 22, § 51452); and upon the contention such regulations violate the constitutional proscription of legislative determinations of fact without regard to actuality and without a hearing on the issue, relying upon the decisions in *Mobile, J. & K. C. R. R.* v. *Turnipseed,* 219 U.S. 35 [55 L.Ed. 78, 31 S.Ct. 136]; *Schlesinger* v. *Wisconsin,* 270 U.S. 230, 239-240 [70 L.Ed. 557, 563-564, 46 S.Ct. 260, 43 A.L.R. 1224]; *Stanley* v. *Illinois,* 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], in support of this contention.

The case at bench involves the suspension rather than the disqualification of appellants from participation in the program. Welfare and Institutions Code section 14123 provides for suspension. Welfare and Institutions Code section 14103.2 provides for disqualification. Contrary to appellants' assertion, the latter is not germane to this case. Under the former the authority to suspend is predicated on the violation of a statute or a regulation of the director and, dissimilar to the latter, does not involve a determination whether drugs cost the program in excess of reasonable value received. The Legislature, acting through the director, may fix the price the state will pay for drugs provided under the program. A pharmacist is not required to participate in the program. In the event he participates he accepts the regulations fixing the price he will be paid. Appellants' constitutional contentions are without foundation.

Appellants' contention respondent's decision is an abuse of discretion is premised on the claim (1) the regulations contained in sections 51513 and 51480 (see fn. 2, *ante*) and in the formulary are ambiguous, unclear and uncertain "as to the price a provider may charge Medi-Cal in relation to charges to the general public"; (2) the regulations in sections 51452, 51480 and 51513 were applied retrospectively; and (3) the penalty imposed is excessive.

The contention the regulations are ambiguous, uncertain and unclear is premised, in substance, on the claim the language used supports

[2]This section was adopted in 1970 and provides: "No provider shall bill or submit a claim for reimbursement for the rendering of health care services to a Medi-Cal beneficiary in any amount greater than the usual fee charged by the provider to the general public for the same service. . . ."

an interpretation the maximum allowable price charged Medi-Cal customers was the average of all of the prices charged other customers for all drugs. Drugs furnished Medi-Cal customers are confined generally to low cost items, whereas those furnished other customers include many high cost items. Applying appellants' average price system to their accounts resulted in a price charged Medi-Cal customers for low cost items greater than the price charged other customers for the same items. There is no basis for appellants' so-called interpretation. To the contrary, it is patently without any foundation.

■ The contention respondent's decision is predicated on the invalid retrospective application of the regulations in sections 51452, 51480 and 51513 also is without foundation. Appellants' price-charging practice violated the provisions of section 51513, declaring the price charged the program for drugs shall not exceed that charged the general public, which was adopted in 1968 and was effective during 1969-1970.[3] Appellants' violation of the regulations in section 51513 subjected them to suspension from participation in the program by virtue of the provisions of Welfare and Institutions Code section 14123 and the heretofore noted regulations in sections 51453 and 51455 of title 22 of the California Administrative Code—reg. 68, No. 43. The statute was enacted in 1969, becoming effective November 10, 1969, and the regulations were adopted and became effective in 1968.

Although, as stated by appellants, sections 51480 and 51452 of title 22 of the California Administrative Code did not become effective until April 1, 1970, this fact, under the circumstances of the case, is of no consequence. The evidence supports a conclusion appellants violated the price-fixing regulations in section 51513, which, as heretofore noted, was in effect during the whole of 1969 and 1970, and authorized their suspension under section 14123 of the Welfare and Institutions Code and section 51453 of title 22 of the California Administrative Code which, together, were in effect during the whole of 1969 and 1970, without reliance on the regulations in sections 51452 and 51480.

■ Whether appellants should have been suspended and the length of any suspension imposed were matters within the discretion of the director. The evidence supports the conclusion the appellants knowingly overcharged their Medi-Cal customers; continued to overcharge them until their illegal practice was discovered by the director; offered a poor

---

[3]An amendment to section 51513 was adopted in 1970, effective December 15, 1970. However, insofar as pertinent to the case at bench, the provisions of section 51513 adopted in 1968 and those of the amendment in 1970 are identical.

excuse for their action; and repaid the amounts illegally charged only because the overcharge was discovered and their excuse was rejected. No abuse of the discretion vested in the director is shown. Appellants' contention to the contrary is without merit.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.